IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | **ORDER GRANTING DEFENDANT'S** |
| | ) | **MOTION FOR COMPASSIONATE** |
| vs. | ) | **RELEASE** |
| | ) | |
| Ambrose Lewis Champagne, | ) | Case No. 4:97-cr-089 |
| | ) | |
| Defendant. | ) | |

Before the Court is Defendant Ambrose Champagne's motion to reduce sentence and amended motion to reduce sentence under 18 U.S.C. § 3582(c)(1)(A), filed on October 17, 2019, and March 23, 2020, respectively. See Doc. Nos. 95 and 101. The Government filed a response to the motion on April 3, 2020. See Doc. No. 106. For the reasons set forth below, the motion is granted.

I.   **BACKGROUND**

On December 2, 1997, a federal grand jury indicted Champagne on one count of being a felon in possession of ammunition and one count of assault resulting in serious bodily injury. See Doc. No. 1. On February 26, 1998, a jury found Champagne guilty on both counts. See Doc. No. 38.

The Presentence Investigation Report ("PSR") noted Champagne was an armed career criminal under the Armed Career Criminal Act, 18 U.S.C. § 924(e), and outlined his prior convictions: (1) 1962 conviction for assault with a dangerous weapon in United States District Court for the District of North Dakota; (2) 1970 conviction for burglary in United States District Court for the District of North Dakota; (3) 1971 conviction for first degree murder in Rolette County District Court in North Dakota; and (4) 1989 conviction for assault resulting in serious bodily injury in the United States District Court for the District of North Dakota. See PSR, pp. 7-8; Doc. Nos. 77-1 through 77-7. The PSR noted

1

Champagne was subject to a Sentencing Guideline range of 360-months to life imprisonment (total offense level 37 and criminal history category VI). See PSR, p. 9. In his motion to reduce sentence, Champagne contends the Sentencing Guideline range was calculated incorrectly. Champagne maintains the correct Sentencing Guideline range 262-327 months (total offense level 34 and criminal history category VI). See Doc. No. 96, pp.4-5.

On May 20, 1998, the Court[1] sentenced Champagne to 360-months of imprisonment. See Doc. Nos. 48 and 49. Champagne appealed, and the Eighth Circuit Court of Appeals affirmed. See United States v. Champagne, 168 F.3d 495 (8th Cir. 1999). On September 4, 2001, Champagne filed a motion under 28 U.S.C. § 2255. See Doc. No. 62. On October 2, 2001, the Court denied the motion. See Doc. No. 67.

On June 21, 2016, the Eighth Circuit Court of Appeals granted Champagne's petition for authorization to file a successive habeas application in the district court. See Doc. No. 71. On June 22, 2016, Champagne filed a second Section 2255 motion, citing the recent opinion of the United States Supreme Court in *Johnson v. United States*, 135 S. Ct. 2551 (2015), as the basis for the motion. See Doc. No. 73. Champagne contends that, in the wake of *Johnson*, he does not have the three necessary predicate convictions to qualify as an armed career criminal under the Armed Career Criminal Act ("ACCA"). On July 18, 2017, this Court denied the motion after finding that all four of his prior convictions qualified as violent felonies under the ACCA. See Doc. No. 84.

Champagne appealed and on February 8, 2019, the Eighth Circuit Court of Appeals issued an opinion vacating this Court's order denying Champagne's motion under 28 U.S.C. § 2255 and remanding for further proceedings. Champagne v. United States, 750 F. App'x 518, 519 (8th Cir.

---

[1]The trial and sentencing were presided over by the Hon. Patrick A. Conmy.

2019).  The Eighth Circuit explained the purpose of the remand was "for the district court to determine whether Champagne has shown by a preponderance of the evidence that his successive § 2255 claim relies on <u>Johnson's</u> new rule invalidating the residual clause."  <u>Id.</u>  The Court ordered additional briefing in light of the remand by the Eighth Circuit.  <u>See</u> Doc. Nos. 92, 93, and 94.  However, in anticipation of a motion to reduce sentence, the parties asked the Court to delay resolution of the remanded Section 2255 motion, as resolution of the motion to reduce sentence was expected to moot the underlying Section 2255 motion.  The motion to reduce sentence has now been filed and fully briefed and is ripe for consideration.

## II.     <u>LEGAL DISCUSSION</u>

18 U.S.C. § 3582(c)(1)(A) allows the Court to modify a term of imprisonment under two circumstances: by motion of the Director of the BOP <u>or</u> upon motion of the Defendant "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  It is undisputed Champagne has exhausted his administrative remedies.  <u>See</u> Doc. No. 109.  The only reason given by the BOP for denying Champagne's request for a sentence reduction under the First Step Act was that he did not have a release plan.

In considering a motion to reduce sentence, the Court must assess whether, after considering the 18 U.S.C. § 3553(a) factors, "extraordinary and compelling reasons" exist which warrant a sentence reduction, and if a sentence reduction is consistent with the Sentencing Commission's applicable policy statement.  <u>See</u> 18 U.S.C. § 3582(c)(1)(A).  There is no right to counsel in Section 3582(c) proceedings.  <u>United States v. Brown</u>, 565 F.3d 1093, 1094 (8th Cir. 2009).  Nor is there a right to a hearing.  <u>See</u>

3

Dillon v. United States, 560 U.S. 817, 827-28 (2010) (observing that, under Federal Rule of Criminal Procedure 43(b)(4), a defendant need not be present at a proceeding under Section 3582(c)(2) regarding the imposition of a sentencing modification).  It should also be noted that the CARES Act does not provide the Court with any expanded authority to grant a motion to reduce sentence under 18 U.S.C. § 3582(c).  See CARES Act, Pub. L. No. 116-136, 134 Stat 281 (2020).

Prior to the passage of the First Step Act in 2018, district courts could only grant compassionate release sentence reductions based upon a motion filed by the director of the BOP.  Such motions were rarely filed.  This all changed when the President signed the First Step Act into law on December 21, 2018.  The relevant portion of the new law now reads as follows:

**(c) Modification of an imposed term of imprisonment**.--The court may not modify a term of imprisonment once it has been imposed except that–

**(1)** in any case–

**(A)** the court, upon motion of the Director of the Bureau of Prisons, <u>or upon motion of the defendant</u> after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that–

**(i)** extraordinary and compelling reasons warrant such a reduction;

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission;

18 U.S.C.A. § 3582(c)(1)(A)(I) (emphasis added).

Unfortunately, the First Step Act does not define "extraordinary and compelling reasons."  The Sentencing Commission's policy statement can be found at Section 1B1.13 of the 2018 Sentencing Guidelines Manual.  The policy statement requires a finding that a claimant meets three requirements:

4

1) extraordinary and compelling reasons warrant the reduction; 2) the defendant is not a danger to the community; and 3) the reduction follows the Sentencing Commission's policy statement. USSG § 1B1.13.  However, the policy statement pertains to the old law rather than the new law and thus is of questionable applicability.  See United States v. Beck, No. 1:13-CR-186-6, 2019 WL 2716505, at *6 (M.D.N.C. June 28, 2019) (concluding the old policy statement provides helpful guidance but does not control the district court's independent assessment of whether "extraordinary and compelling reasons" warrant a sentence reduction.).  This Court agrees that the Sentencing Commission's existing policy statement provides only limited guidance.  See United States v. Fox, No. 2:14-CR-03, 2019 WL 3046086, at *3 (D. Me. July 11, 2019).  In addition, the Sentencing Commission will not be publishing a 2019 or 2020 Sentencing Guidelines Manual for lack of a quorum.  Beck, No. 1:13-CR-186-6, 2019 WL 2716505, at *5 n.7.

The Application Note to U.S.S.G. § 1B1.13 provides as follows:

1.   **Extraordinary and Compelling Reasons**.--Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

(A)   **Medical Condition of the Defendant**.--

(i)   The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii)   The defendant is–

(I)   suffering from a serious physical or medical condition,

(II)   suffering from a serious functional or cognitive impairment, or

(III)   experiencing deteriorating physical or mental health

5

because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) **Age of the Defendant**.--The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) **Family Circumstances**.--

(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

(ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) **Other Reasons**.--As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

2. **Foreseeability of Extraordinary and Compelling Reasons**.--For purposes of this policy statement, an extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment. Therefore, the fact that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement.

3. **Rehabilitation of the Defendant**.--Pursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement.

4. **Motion by the Director of the Bureau of Prisons**.--A reduction under this policy statement may be granted only upon motion by the Director of the Bureau of Prisons pursuant to 18 U.S.C. § 3582(c)(1)(A). The Commission encourages the Director of the Bureau of Prisons to file such a motion if the defendant meets any of the circumstances set forth in Application Note 1. The court is in a unique position to determine whether the circumstances warrant a reduction (and, if so, the amount of reduction), after considering the factors set forth in 18 U.S.C. § 3553(a) and the criteria set forth in this policy statement, such as the defendant's medical condition, the defendant's family circumstances, and

whether the defendant is a danger to the safety of any other person or to the community.

This policy statement shall not be construed to confer upon the defendant any right not otherwise recognized in law.

5.   **Application of Subdivision (3)**.--Any reduction made pursuant to a motion by the Director of the Bureau of Prisons for the reasons set forth in subdivisions (1) and (2) is consistent with this policy statement.

U.S.S.G. § 1B1.13.

Champagne contends he satisfies the Sentencing Guideline criteria for extraordinary and compelling reasons based upon his age and medical conditions. A defendant will qualify for a sentence reduction based upon his age if he is: (i) at least 65 years old; ii) experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his term of imprisonment, whichever is less. U.S.S.G. § 1B1.13, comment. n. 1(B). Health problems qualify if they are serious and substantially diminish the ability to provide for self-care. U.S.S.G. § 1B1.13, comment. n. 1(A)(ii). It is undisputed Champagne meets both of these criteria.

Champagne is a 77-year old man who has been in federal custody since December 1997. He has served approximately 271 months of his 360 month sentence (75.27%). His presumptive release date per the BOP website is June 5, 2023. He is serving his sentence at the FMC Rochester. He has been at FMC Rochester since 2011. He is classified at a Care Level 4 which is the highest level of care. Inmates classified a Care Level 4 "may be so severely impaired as to require 24-hour skilled nursing care or nursing assistance." See Doc. No. 102-4, p. 5. His undisputed medical problems include the following:

He has been diagnosed with chronic osteomyelitis, type 2 diabetes, hypertension, disease of the esophagus, and acute kidney failure. Individually, each is sufficiently serious to warrant compassionate release. Specifically, his medical records detail treatment for Champagne's chronic osteomyelitis in his right tibia. These treatments have been ongoing for several years. Recently, he underwent a debridement procedure,

7

> which involved surgically removing the infected parts of his bone. Champagne's osteomyelitis is serious enough to possibly require amputation of his leg.
>
> Champagne's multifactorial neurocognitive disorder is sufficiently serious to warrant compassionate release. He has been diagnosed with mild cognitive impairment, dementia, and likely Alzheimer's disease. These conditions go beyond the expected cognitive decline of normal aging.

See Doc. No. 102 at pp. 7-8. His dementia makes it difficult for him to provide self-care. See Doc. No 105. pp. 7, 100, 102, and 105.

Based upon his advanced age, inability to care for himself, and dementia, there is little doubt Champagne no longer represents a danger to the community. Champagne has had few serious disciplinary issues while incarcerated and the BOP has consistently lowered his security classification. A person's physical and medical condition are factors in determining community danger. See 18 U.S.C. § 3142(g)(3)(A). Champagne has a troubling criminal history, but after spending the last 23 years in prison and at 77 years of age with serious health problems, he is not the same man he was when he was sentenced.

The Court has carefully reviewed the entire record and concludes Champagne has clearly demonstrated "extraordinary and compelling reasons" that would warrant a sentence reduction. See United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016) (the burden is on the defendant to establish a sentence reduction is warranted under 18 U.S.C. § 3582(c)(2)). The Court has also carefully considered each of the Section 3553(a) sentencing factors and incorporates by reference into this assessment all of the docket entries in the case that address these sentencing factors. The Section 3553(a) factors also justify a compassionate release.

## III.  CONCLUSION

For the reasons set forth above, the Defendant's motion to reduce sentence (Doc. Nos. 95 and

101) is **GRANTED**.  The Court finds the Defendant's motion for Section 2255 relief to be moot.

Champagne's sentence is reduced to a sentence of "time served."  The term of supervised release

remains five (5) years.  The originally ordered conditions of supervised release remain in effect along

with the additional conditions set forth below.

1. The defendant shall not leave the judicial district without permission of the court or probation officer.

2. The defendant shall report to the probation officer in a manner and frequency directed by the court or probation officer.

3. The defendant shall answer truthfully all inquiries by the probation officer and follow the instruction of the probation officer.

4. The defendant shall support his or her dependent and meet other family responsibilities.

5. The defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other.

6. The defendant shall notify the probation officer at least ten days prior to any change in residence or employment.

7. The defendant shall refrain for excessive us of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician.

8. The defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered.

9. The defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer.

10. The defendant shall permit the probation officer to visit him or her at any time at home or elsewhere and shall permit the confiscation of any contraband observed in plain view of the probation officer.

11. The defendant shall notify the probation officer within seventy-two hours of being arrested or questioned bu a law enforcement officer.

12.    The defendant shall not enter into any agreement to act as an informer or special agent of a law enforcement agency without the permission of the court.

13.    As directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

14.    You must participate in a program aimed at addressing specific interpersonal or social areas, for example, domestic violence, anger management, marital counseling, financial counseling, cognitive skills, parenting, at the direction of your supervising probation officer.

15.    As directed by the Court, if during the period of supervised release the supervising probation officer determines you are in need of placement in a Residential Re-Entry Center (RRC), you must voluntarily report to such a facility as directed by the supervising probation officer, cooperate with all rules and regulations of the facility, participate in all recommended programming, and not withdraw from the facility without prior permission of the supervising probation officer. The Court retains and exercises ultimate responsibility in this delegation of authority to the probation officer.

16.    You must submit your person, residence, workplace, vehicle, computer (including password), and/or possessions to a search conducted by a United States Probation Officer based upon reasonable suspicion of a violation of a condition of supervision. Failure to submit to a search may be grounds for revocation, additional criminal charges, and arrest. You must notify any other residents that the premises may be subject to searches pursuant to this condition.

17.    You must participate in a chemical dependency treatment program as approved by the supervising probation officer.

18.    You must totally abstain from the use of alcohol and illegal drugs or the possession of a controlled substance, as defined in 21 U.S.C. § 802 or state statute, unless prescribed by a licensed medical practitioner; and any use of inhalants or psychoactive substances (e.g., synthetic marijuana, bath salts, etc.) that impair your physical or mental functioning.

19.    You must submit to drug/alcohol screening at the direction of the United States Probation Officer to verify compliance. Failure or refusal to submit to testing can result in mandatory revocation.  Tampering with the collection process or specimen may be considered the same as a positive test result.

20.    The defendant shall participate in a mental health program as directed by his

probation officer and shall take all medications as prescribed by a licensed physician.

  **IT IS SO ORDERED.**

Dated this 25th day of June, 2020.

*/s/ Daniel L. Hovland*
Daniel L. Hovland, District Judge
United States District Court

11